May it please the Court, my name is Howard Rubin, and I represent the appellant, Directv. These appeals involved Directv's claims against four defendants. All four men bought illegal pirate access devices that are specifically designed for the purpose of stealing Directv's programming. None of the four ever appeared in court, either at the district court level or here at the Court of Appeals. And on default judgment, the district court found all four defendants liable for having intercepted Directv's program, for stealing that program in violation of the Wiretap Act. Ms. Rubin, is there – first of all, I guess my first question is, what is it that amounts to an intercept, first question? And second question is, was there any evidence put in at the default prove-up hearing, as it were, on how many intercepts there were? Okay. I'll start with the first question. What constitutes an interception? Interception is when someone bypasses Directv's encryption technology and is able to watch programming without paying for it, quite simply. They might have a low-level subscription that doesn't give them access to movies or pay-per-view events, and they use a pirated access card. Or if a card was damaged Is there any evidence here that actual intercepts occur rather than the potential for them? Right. No, Your Honor. And that's, I think, the wrong question at the damages phase. There's really two things I want to do, and one of them is that very issue. I think that Judge Hogan asked the wrong question when he was at the damages phase. Well, I'm asking the same wrong question. I mean, the reality – the thing is, I mean, if you look – if you think by analogy to copyright law, you've got statutory damages there, too. Right. But at least my memory in practice – from practice was that you actually had to show how many plays of an infringing musical – music or whatever it was, so why would it be the same? I think the Wireclap Act is different. I do not believe there is an obligation, especially on default, to show how many times. And let me explain why. Three or four reasons. Number one, the judge said there was no evidence of how many times, if any, there had been interception. For him to pose the question whether there was any interception at all, I think, is the wrong question, given he had already found the defendant's liable on default judgment for having intercepted. So for him to ask an issue like that – Intercepted or endeavored to intercept. I'm sorry? Or endeavored to intercept. Actually, there's no civil liability for simply endeavoring to intercept. Really? Okay. The criminal provision is 18 U.S.C. 25111A. That makes a criminal to endeavor to intercept, or actually intercept, or assist others in intercepting. 18 U.S.C. 2520 is the civil remedy provision. There, the only cause of action exists against people who have intercepted. So there wouldn't have been a claim but for actual interception. Here, the reason why it's inappropriate to impose on DirecTV the obligation of showing how many times is that, by definition, piracy is surreptitious by nature. This kind of stealing happens in people's homes, bedrooms, living rooms, and there is no – I understand. But how would you know whether to give statutory damages of $100 or $10,000? Actually, Congress contemplated that there would be instances for these kind of violations, the stealing of electronic communications, where we'd never be able to know. If you look at the damages provision, 2520C, C-2 is the provision for statutory damages.  I think that's Congress's pretty clear statement, that it recognizes that when it comes to stealing satellite programming, where there – it just simply isn't possible for DirecTV to know when someone turns on their own looper and steals programming, that there's another mechanism, and Congress recognizing that these are serious violations. This is the stealing of encrypted – As I understand your argument, then, what you're basically saying is that once the found that there was a basis on the default allegations to grant an injunction, he had no choice but to grant an award of statutory damages of $10,000. In the default context. That's what I'm saying. In the default context. But that's inconsistent with what the statute says. You're essentially arguing that he had no discretion, he had no choice but to award $10,000 in damages. No, I would argue that he did, first of all. So then why did he abuse his discretion? Because he – two reasons. Number one, he never considered the evidence DirecTV submitted in support of damages. He asked the wrong question and then never posed the right question. The right question in a default context, after having established liability, was whether DirecTV provided any evidence of having been actually aggrieved of any financial harm. In support of each motion for default judgment, we submitted about a 20-page affidavit from someone from the Office of Signal Integrity at DirecTV. Other than one footnote where he references the definition of the particular device that was used, Judge Hogan never mentions that affidavit. And let me just quickly walk through the things that he didn't consider that, in our view, demonstrated that there was harm to DirecTV. Number one, DirecTV stated that its revenues are derived principally from subscription fees and pay-per-view events. We demonstrated that the average high-end user, the top 10 percent of DirecTV's customers, spend about $2,750 a year. We had evidence that showed each of these men bought devices in either 2000 or 2001, and that there was a capability of using these devices to steal programming all the way through April 2004, making the $2,750 times three or four years, I think, eminently reasonable when you consider a $10,000 statutory damage award. We walked through all the different ways DirecTV spends money combating piracy, creating an Office of Signal Integrity, having to create new encryption technology when certain access cards are pirated, conducting civil raids, engaging in litigation. All these are factors showing, or evidence, showing that DirecTV is financially harmed by piracy. We think it's the wrong question, specifically on default, when the defendants abuse judicial process and at no point ever show up in court, to hold DirecTV accountable to show how many times. If that's the standard, then what the court has done is give defendants a blueprint for never showing up in court, because there would be no incentive for the defendant to come to court if it knew DirecTV's never going to be able to figure out how many times I stole, and if I stay home, disrespect court process, there will be no access to me for a deposition, there will be no way to get discovery, whether that's imaging a computer hard drive or identifying other people who are witnesses that could be deposed. We are not setting up a standard that we think should apply necessarily in the summary judgment context or a trial. What we're saying is when we're in default and liability has already been found by the court, in that instance, under this statute, it would be an abuse of discretion not to at least consider DirecTV's evidence that it put in a financial harm and to simply say that DirecTV has to prove how many times. The district court's analysis really amounted to no more than two sentences. He said on page 174, which was the Lee opinion, and all the opinions are basically identical, he says, DirecTV never showed me how many times, if any, there was interception, and without conclusive evidence of actual interception, I'm not going to find damages. A case that we didn't cite in our brief because we didn't think it was directly on point is DirecTV v. Minor. This is an unpub --" excuse me, a published, unanimous decision written by Judge Patrick Higginbotham in the Fifth Circuit on a DirecTV case on summary judgment. He recognized there, and other Federal appellate courts have as well, that piracy is surreptitious by nature. It just can't possibly be, again, in the default context, that we're going to make a decision about the number of times someone pirated. It's precisely for that reason that we offered the evidence of the high-end user. It is the best circumstantial evidence we can offer to justify the $10,000 award. Last week, about 10 days ago, we provided the Court with one additional citation. It was DirecTV v. Panki. We're not suggesting it's controlling on this Court, obviously, but it's a decision from the Eastern District of California that we'd asked the Court to consider. There, it was actually a summary judgment context. So I think that we actually have a more powerful argument here on default. But you'll see a completely different method of analyzing how you figure out damages under the Wiretap Act when someone has stolen DirecTV. And I'd submit, although it is absolutely the case that you're evaluating this on an abuse of discretion standard, I'd submit to the Court that the analysis in Panki and the analysis here by Judge Hogan, they both don't fit within the bounds of discretion. I don't think Judge Hogan's analysis really, number one, recognized the record evidence. Let me just confirm one thing. Sure. The only choice you gave the judge was zero or $10,000. Yes. Yes, that's right, because in our complaint, right at the announcing to the defendant, we said in the event of a default, we will seek statutory damages under 18 U.S.C. 2520C2B. So we were notifying the defendant, if you don't show up, we're going to ask for $10,000. And then in our paper supporting default judgment in the affidavits, we again repeated the request for Wiretap Act damages. And, yes, the statutory damage is a minimum of $10,000. Thank you, Your Honor. Thank you, Mr. Rubin. Anything else? No. All right. Thank you. Thank you. The matter just argued will be submitted and will mix to your argument in Emmerman's Department of Agriculture.
judges: Rymer, T.G. Nelson, Paez